IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEVEN A. MOSLEY,
SHERYL M. MOSLEY, RONALD
KELTNER, and GINNY KELTNER                                              PLAINTIFFS

v.                              Case No. 4:17-cv-00500-KGB

JIM MORLEY, in his official capacity as
Director of Building, Code Enforcement
and Permits for the City of Maumelle and
CITY OF MAUMELLE, ARKANSAS                                              DEFENDANTS

## OPINION AND ORDER

Before the Court is a motion for partial summary judgment filed by plaintiffs Steven A. Mosley, Sheryl M. Mosley, Ronald Keltner, and Ginny Keltner (Dkt. No. 44). Defendants Jim Morley, in his official capacity as Director of Building, Code Enforcement and Permits for the City of Maumelle, and the City of Maumelle, Arkansas (collectively, "the City"), have responded in opposition (Dkt. Nos. 45, 46). Plaintiffs have replied (Dkt. No. 49). For the reasons that follow, the Court denies the motion (Dkt. No. 44).

### I.     Factual Background

Plaintiffs, residents of Maumelle, Arkansas, bring this 42 U.S.C. § 1983 action seeking declaratory and injunctive relief against the City. Plaintiffs argue in their present motion that the City violated the substantive due process guarantees of both the United States and Arkansas Constitutions. The Court summarized the factual background of this matter in prior Orders and adopts and incorporates by reference those summaries (Dkt. Nos. 48, 51). Unless otherwise noted, the following additional facts are taken from plaintiffs' statement of undisputed material facts (Dkt. No. 44-2), the City's response to plaintiffs' statement of undisputed material facts (Dkt. No.

46), and plaintiffs' reply to the City's response to plaintiffs' statement of undisputed material facts (Dkt. No. 49-2).

The parties agree that both side fences on the Mosleys' property previously extended all the way down to the river inlet (Dkt. No. 44-2, ¶ 5; Dkt. No. 20, ¶ 10). In June 2016, approximately 20 feet of one of the Mosleys' side fences were damaged by a tree service company hired by the Mosleys' neighbor, Mr. Keltner (Dkt. No. 44-2, ¶ 7). Based on a measurement taken by Mr. Mosley after the onset of this litigation, the fence is approximately 156 feet in length (*Id.*, ¶ 8). Plaintiffs contend that Mr. Keltner was threatened with criminal prosecution by the City because of a damaged side fence the City claimed extended beyond his rear property line (*Id.*, ¶ 15). On June 26, 2014, the following email exchange occurred between City Attorney JaNan Davis and Mr. Morley (*Id.*, ¶ 23).

Ms. Davis wrote the following:

I talked to [a resident] . . . about his fence . . . . He takes the position that the 40 foot portion of his fence that was damaged did not render his fence "materially damaged" for purposes of removing it from the protection of the grandfather provision in the fence ordinance. I told him I would view the fence in sections – not the entire perimeter of the yard and that 40 feet down would be "materially damaged" in my view. But ultimately, it did not matter my view or yours, the [planning commission] would have to grant/deny the variance.

(*Id.*).

Mr. Morley sent the following response:

I agree with you. My view is that we shouldn't allow the re-building or repair of any portion of a fence in a non-compliant manner.

(*Id.*).

Plaintiffs submit the City's responses to interrogatories 28 through 34 to allege that, even after this action was filed challenging the validity of § 14-114(b), the City still could not articulate a rational explanation concerning the meaning of the term "materially challenged" (*Id.*, ¶ 24).

2

Plaintiffs now move for partial summary judgment on the issue of whether the City has violated plaintiffs' rights under the Due Process Clauses of the United States and Arkansas Constitutions.

## II. Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The quantum of proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Id*. at 257. On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable

inferences that can be drawn from the facts. *Rakes v. Life Investors Ins. Co. of Am.,* 582 F.3d 886, 893 (8th Cir. 2009).

### III. Discussion

#### A. Federal Rule Of Civil Procedure 56(c)(1)

In response to plaintiffs' motion for partial summary judgment, the City argues that certain of plaintiffs' assertions of fact are not supported by citations to admissible evidence pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. No. 46, ¶¶ 5, 15, 24). Plaintiffs submit that their statements are supported by citation to the record evidence, in particular citations to the City's answer, a letter submitted in support of the motion for partial summary judgment, and the City's responses to interrogatories (Dkt. No. 49-2, at 2, 8, 12-13). Plaintiffs in turn argue that the City has not complied with Rule 56(c)(1) (*Id.*, at 2).

A party moving for, or opposing, summary judgment, must support the party's assertions by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record such as depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

The Court has considered the entirety of the record before it in this action. Fed. R. Civ. P. 56(c)(3) ("The Court . . . may consider other materials in the record."). The Court rejects the City's

Rule 56(c) arguments in its response to plaintiffs' statement of undisputed facts in support of their motion for partial summary judgment.

### B. Federal Rule Of Civil Procedure 56(d)

The City argues in response to two of plaintiffs' statements of undisputed material facts that, currently, it cannot cite to portions of the record to dispute the facts alleged but once discovery has been conducted, the record may show that these facts are in dispute (Dkt. No. 46, ¶¶ 6, 7).

Under Federal Rule of Civil Procedure 56(d), if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition to a motion for summary judgment, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

"As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) (internal quotations omitted). "This option [under Rule 56(d)] exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." *Id.* at 1050. However, Rule 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment." *United States ex rel. Small Bus. Admin. v. Light,* 766 F.2d 394, 397 (8th Cir.1985) (per curiam). Thus, district courts possess "wide discretion in denying" Rule 56(d) motions. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836 (8th Cir. 2015).

A Rule 56(d) affidavit "must set forth specific facts further discovery might uncover, or what information further discovery might reveal." *Hamilton*, 687 F.3d at 1049 (affirming denial of Rule 56(d) motion where district court stayed discovery and then ruled on motion for summary

5

judgment, determining plaintiff failed to show what further facts he would uncover through a Rule 56(d) extension). A nonmovant seeking relief under Rule 56(d) must do more than speculate that it may discover additional facts that would overcome a motion for summary judgment, *see Stanback v. Best Diversified Prods.,* 180 F.3d 903, 911 (8th Cir.1999), and must submit an affidavit showing "'what specific facts further discovery might unveil.'" *Id.* (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1238 (8th Cir.1997)). "Where a party fails to carry [his] burden under Rule [56(d)], 'postponement of a ruling on a motion for summary judgment is unjustified.'" *Id.* (quoting *Humphreys v. Roche Biomedical Labs., Inc.,* 990 F.2d 1078, 1081 (8th Cir.1993)).

The City failed to submit an affidavit or declaration explaining what facts or information further discovery might uncover and why it cannot present facts essential to justify its opposition to plaintiffs' motion for partial summary judgment at this time. As a result, the Court rejects the City's arguments on this point.

### C. Due Process Claims

Plaintiffs claim that there are no disputed material facts with respect to the issue of whether the City violated plaintiffs' rights under the Due Process Clauses of the United States and Arkansas Constitutions. Plaintiffs maintain therefore that they are entitled to partial summary judgment as a matter of law on these claims. The Court addresses each of plaintiffs' due process claims in turn.

#### 1. Vagueness

Plaintiffs argue that the ordinances governing fences in Maumelle impose criminal penalties for certain types of prohibited conduct and, as such, the ordinances must inform the public of what type of conduct is prohibited (Dkt. No. 44-1, at 24-25). Plaintiffs assert that § 14-114(b) is vague because there is no definition of the term "materially damaged" in the ordinance (*Id.*, at 13). Further, plaintiffs assert that the City has interpreted "materially damaged" in the

broadest manner possible by dividing a fence into "portions" then determining, based on how much damage there is to a portion of the fence, whether material damage has occurred (*Id.*, at 14). Plaintiffs submit that the ordinance contains no written standards for what constitutes a "portion" of a fence (*Id.*, at 14-15). Plaintiffs argue that Mr. Morley interprets the term "materially damaged" to encompass "any" portion of the fence, regardless of how small it might be, and that this interpretation is tantamount to saying that "any damage" to a fence causes the fence to lose its exempt status (*Id.*, at 15-16).

Plaintiffs contend that the following interrogatory responses submitted by the City support the plaintiffs' argument that the term "materially damaged" is vague:

**INTERROGATORY NO. 28**

What does the term "materially damaged" mean as it is used in Section 14-114(b) of the Maumelle Code of Ordinances?

City's Response to Interrogatory No. 28: "A fence is materially damaged . . . when it has been injured or harmed such that the usefulness or normal function of the fence is significantly impaired."

**INTERROGATORY NO. 29**

Is a fence "materially damaged" under Section 14-114(b) of the Maumelle Code of Ordinances when any portion at all of that fence is "materially damaged?"

City's Response to Interrogatory No. 29: "Not necessarily."

**INTERROGATORY NO. 30**

Please state what portion or portions of a fence must be damaged before a fence becomes "materially damaged."

City's Response to Interrogatory No. 30: "Save perhaps 100%, there is no set percentage of damage that a fence must suffer that is both necessary and sufficient for the fence to be materially damaged."

**INTERROGATORY NO. 31**

Please state which of the following percentages or portions of a fence must be damaged in order for the fence to be "materially damaged."

a. 90%
b. 75%
c. 50%
d. 33%
e. 25%
f. 15%
g. 10%
h. 5%

City's Response to Interrogatory No. 31: "None of the above."

**INTERROGATORY NO. 32**

Is it your contention that a fence is "materially damaged" when 90% or more of that fence remains undamaged and intact?

City's Response to Interrogatory No. 32: "The City does not contend that a fence is necessarily 'materially damaged' when 90% or more of that fence remains undamaged and intact . . . ."

(*Id.*, at 19).

Plaintiffs argue that § 14-114(b) confers an absolute, unregulated discretion or authority on Maumelle Code Enforcement officials because there is no clear or definitive meaning of the term "materially damaged" (*Id.*, at 17, 34). Plaintiffs contend that the Code Enforcement officials have complete and unrestricted discretion to determine when this provision applies (*Id.*, at 34). Further, plaintiffs argue that the City inappropriately interprets § 14-114(b) to mean that a materially damaged fence previously exempted from the ordinance that extends beyond the property line must be removed (*Id.*, at 39). Plaintiffs contend that § 14-114(b) only says the damaged fence must be "repaired, replaced, or reconstructed in compliance" with the ordinance and that it says nothing about having the older fences removed (*Id.*, at 39-40).

The City responds that, at its base, "material" is defined as "significant," "essential," or generally "of such a nature that knowledge of the item would affect a person's decision-making" (Dkt. No. 45, at 2). The City submits that it is appropriate to assume that fences are designed principally for one or two purposes: to keep things in and/or to keep things out (*Id.*). The City

8

asserts that damage to a fence that is material, therefore, constitutes any damage that would prevent the fence from serving those primary purposes (*Id.*). To support its assertion, the City submits its response to Interrogatory No. 28: "[a] fence is materially damaged . . . when it has been injured or harmed such that the usefulness or normal function of the fence is significantly impaired" (*Id.*, at 2-3). The City contends that the cases cited by plaintiffs regarding statutory codes with specific percentage values contain regulations that attach percentages to the structure's replacement value, not to the physical portion of the structure itself, and that this distinction is crucial (*Id.*, at 3). The City asserts that the Maumelle City Code is not concerned with the replacement value of a fence but whether the fence is materially damaged in a physical sense (*Id.*). According to the City, if even only two percent of plaintiffs' fence were damaged, and a stray animal or wandering child were able to walk onto plaintiffs' property through the damaged portion, the fence would still be unable to serve its primary purpose (*Id.*, at 4). The City contends that assigning a specific numerical value is irrelevant to the purpose and application of the ordinance (*Id.*).

The City further argues that § 14-114 is not so standardless that it authorizes or encourages seriously discriminatory or arbitrary enforcement (*Id.*). The City points to a letter that Mr. Morley wrote to plaintiffs, which plaintiffs include as an exhibit to their brief, that provides:

> [Section 14-112(b) and Section 14-114(b)] were passed in 2006 in order to have residents remove fences that had been built beyond their property lines. Residents had been constructing fences on open space and common property in order to enlarge their yard area. The [c]ity council passed the law to prevent this from happening in the future and over time, to have the older fences removed when they needed repair or replacement.

(*Id.*, at 4-5).

The City contends that this process is clear and specific, explaining:

> In recognition that there are many citizens throughout the city that have erected fences that extend past their property line, the City has decided to grant its citizens leniency. Rather than forcing every individual owning a fence that extends past

9

their property line to dismantle it and remove it, the City waits until the fence falls
into disrepair before requiring the owner to remove only that section of the fence
that extends past their property.

(*Id.*, at 5). The City submits that, per the relevant ordinances, fences created prior to 2006 that are in violation of the city code shall be exempted only so long as they remain in good repair, and that once a fence erected prior to 2006 has fallen out of repair and has become materially damaged, the fence loses its exempted status (*Id.*, at 6). The City asserts that only those individuals who own fences that have fallen into disrepair will be exempted from the City's "grandfather" policy (*Id.*, at 5). In response to plaintiffs' argument that the City has no authority to remove the damaged fences because § 14-114(b) only discusses "repair[ing], replac[ing], [and] reconstruct[ing]," the City argues that, as soon as the fence became in need of repair, it lost its exempt status (*Id.*, at 5). The City contends that, once the fence loses its exempt status, the law is clear that the City may order it removed to be in compliance with the Maumelle City Code (*Id.*).

In their reply, plaintiffs argue that the City in its response implicitly admits that it has no clear definition for the term "materially damaged" and that one person's perception of "materially damaged" may not be the same as another person's perception (Dkt. No. 49-1, at 2-3). Plaintiffs assert that "need for repair" is not the same as "materially damaged" and that "material" is not the same as "materially damaged" (*Id.*, at 3, 8). Plaintiffs argue that the City mistakenly discounted the importance of percentages in providing an element of certainty with respect to damaged fences and that, contrary to the City's assertion, a number of examples cited by plaintiffs did use percentages to measure damage to a structure, rather than replacement value (*Id.*, at 4).

Section 14-112(9) provides: "No fence may be constructed beyond the property line" (Dkt. No. 44-3, at 11). Section 14-114(b) provides:

This article shall not apply to fences erected before November 1, 2006, but such
fences are nonetheless subject to any other applicable restrictions which may

10

> legally exist. However, if a fence exempted by the foregoing provision is materially damaged, destroyed[,] or otherwise removed, the same must be repaired, replaced[,] or reconstructed in compliance with this article.

(*Id.*, at 12).

"Under the void-for-vagueness doctrine, a law is unconstitutional if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). A law imposing criminal sanctions or implicating constitutional rights requires more definiteness than a law with civil penalties or regulating economic behavior. *Id.* at 498-99. *See also Keating v. University of South Dakota*, 569 Fed. Appx. 469, 471 (8th Cir. 2014) ("When, as here, an enactment does not impose criminal penalties, due process tolerates a lesser degree of specificity than it would from a criminal statute.").

Plaintiffs submit that the fence ordinances are laws that impose criminal penalties because: (1) Maumelle Code of Ordinances Section 1-8(c) provides for "punishment" of a "person convicted of a violation of this Code"; (2) the fence ordinances impose penalties if forbidden conduct occurs; (3) Mr. Keltner was threatened with criminal prosecution when he rebuilt the damaged fence in violation of §§ 14-112(9) and 14-114(b); and (4) Mr. Mosley was criminally prosecuted on two separate occasions (Dkt. No. 44-1, at 13-14). The City does not dispute plaintiffs' characterization of the ordinances as imposing criminal penalties. The City also cites

to the same case as plaintiffs for the void-for-vagueness doctrine, *Musser*, which involves a since-repealed criminal statute. 718 F.3d at 998.

Section 1-8(c) of the Maumelle Code of Ordinances provides:

> Except as otherwise provided, a person convicted of a violation of this Code shall be punished by a fine not exceeding $500.00, or double such sum for each repetition of the violation. If the violation is, in its nature, continuous in respect to time, the penalty for allowing its continuance is a fine not to exceed $250.00 for each day the violation is unlawfully continued.[1]

Section 1-8(d) provides: "If a violation of this Code is also a misdemeanor under state law, the penalty for the violation shall be as prescribed by state law for the state offense."[2] The letter plaintiffs submit to argue that Mr. Keltner was threatened with criminal prosecution is a letter from Mr. Morley to Mr. Keltner indicating that Mr. Keltner is in violation of §§ 14-112(9) and 14-114(b) of the Maumelle City Code (Dkt. No. 44-3, at 15). In the letter, Mr. Morley informs Mr. Keltner that:

> Because of these sections in the Maumelle City Code, the portion of the fence that is beyond your property line must be removed. This section of fence is beyond your North/West property corner. Please have this portion of the fence removed within 30 days from the date of this letter.

(*Id.*).

In support of their claim that Mr. Mosley was criminally prosecuted on two separate occasions, plaintiffs submit a citation issued by Mr. Morley on March 22, 2017, stating that Mr. Mosley was in violation of § 14-143 because the swimming pool at his residence was not fully enclosed by a fence or approved barrier on all sides (*Id.*, at 16). Mr. Mosley was cited for the same violation previously on September 26, 2016 (*Id.*, at 7), but City Attorney Caleb Norris indicated

---

[1] "Penalty for violations," Maumelle Code of Ordinances, available at https://library.municode.com/ar/maumelle/codes/code_of_ordinances?nodeId=CICO_CH1GEPR_S1-8PEVI (last visited March 20, 2019).

[2] *Id.*

12

by email on November 28, 2016, that he would "nolle pros the code violation" (*Id.*, at 6). Section 14-142 provides that an individual in violation of § 14-143 "shall be guilty of a misdemeanor and may be fined $250.00 for each offense, and each day a situation is allowed to continue which constitutes a violation shall constitute a separate offense."[3]

While the penalties for violating § 14-143 can more accurately be characterized as criminal, the Court finds that on the record evidence before it the penalties for violating §§ 14-112(9) and 14-114(b) are closer to civil or "quasi-criminal" than the criminal law at issue in *Musser*. *See Village of Hoffman Estates*, 455 U.S. at 499. The Court finds no corresponding laws in the Arkansas Criminal Code, § 5-1-101, *et seq.*, providing for further penalties beyond the fines imposed for violation of the Maumelle City Code.

Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. *St. Louis Effort for Aids v. Huff*, 782 F.3d 1016, 1027 (8th Cir. 2015). In an "as applied" vagueness challenge, plaintiffs may only succeed by "demonstrat[ing] that the [ordinance] is impermissibly vague in all of its applications." *Woodis v. Westark Community College*, 160 F.3d 435, 439 (8th Cir. 1998) (citing *Village of Hoffman Estates*, 455 U.S. at 497). Based upon the current record evidence before the Court, the standards here do not threaten to inhibit the exercise of First Amendment rights, and plaintiffs do not contend in their motion for partial summary judgment that their First Amendment rights are at issue in this case.

The Court must next determine whether, on the record evidence before it with all inferences drawn in favor of the City, the ordinances were not sufficiently precise to notify plaintiffs that the

---

[3] "Penalties for violation of division," Maumelle Code of Ordinances, available at https://library.municode.com/ar/maumelle/codes/code_of_ordinances?nodeId=CICO_CH14BUB URE_ARTIVFE_DIV2SWPOFE_S14-142PEVIDI (last visited March 20, 2019).

13

20 feet of damage to the side fence rendered the fence "materially damaged" and that their reconstruction of the fence where it previously existed would violate §§ 14-112(9) and 14-114(b) as plaintiffs contend in the motion for partial summary judgment. The Court determines that, even applying the *Musser* standard for laws imposing criminal sanctions, on the record evidence before it with all inferences drawn in favor of the City, plaintiffs are not entitled to judgment as a matter of law on this point. Plaintiffs are not entitled to summary judgment in their favor that the ordinance was not sufficiently clear as applied to plaintiffs.

Viewing all the evidence before the Court in the light most favorable to the City as the Court is required to do at this stage, a reasonable factfinder could agree with the City that at least two of the primary purposes of a fence are to keep things in and to keep things out. On the record evidence before it, taking into account the legal authorities cited by both sides, the Court is not convinced of plaintiffs' argument that an ordinance that includes a phrase such as "materially damaged" is vague unless it contains a specific percentage value. Further, the Court finds irrelevant to the issue of vagueness the distinction between "the fence" and a "portion" of the fence when considering whether the fence has been materially damaged.

Nor does the Court find on the record evidence before it with all inferences drawn in favor of the City that plaintiffs are entitled to judgment as a matter of law on their argument that the fence ordinances are so standardless that they authorize or encourage seriously discriminatory enforcement by the City. On the record before it, a reasonable factfinder could conclude that the City is constrained in its interpretation and enforcement of the ordinances by whether the fence has been materially damaged, for which a reasonable factfinder could determine the City has articulated a reasonable standard: when any damage that would prevent the fence from serving its primary purposes of keeping things in or out (Dkt. No. 45, at 2). The City explains its purpose for

the ordinances in its letter to plaintiffs: "The City Council passed the law to prevent [the construction of fences on open space and common property to enlarge an individual's yard area] from happening in the future and, over time, to have the older fences removed when they needed repair or replacement" (Dkt. No. 44-3, at 15).

Further, the Court is unconvinced by plaintiffs' argument that § 14-114(b) says nothing about having the older fences removed and that, therefore, the City lacks the legal authority and inappropriately interprets the ordinances to order the damaged fences removed. Plaintiffs are not entitled to summary judgment in their favor on this argument. Plaintiffs agree that the contested portion of the fence extends beyond the property line. Both parties recognize that it was originally exempted from the ordinances by the section of § 14-114(b) that states: "This article shall not apply to fences erected before November 1, 2006." However, § 14-114(b) also states: "if a fence exempted by the foregoing provision is materially damaged, destroyed[,] or otherwise removed[,] the same must be repaired, replaced[,] or reconstructed in compliance with this article." Section 14-112(9) of the Code provides: "No fence may be constructed beyond the property line" (Dkt. No. 44-3, at 11).

After careful review of the record evidence before the Court, the Court determines that there are genuine issues of material fact in dispute, and the Court will not grant plaintiffs' motion for partial summary judgment on this basis.

### 2. Rational Basis

Plaintiffs argue that § 14-114(b) violates their due process rights because there is no rational connection between damage to a fence and the legality of its position (Dkt. No. 44-1, at 45-48). Plaintiffs do not allege that they were deprived of a "fundamental right" for purposes of substantive due process analysis, so the City's enactment of the ordinance is constitutional if it

rationally furthers a legitimate state interest. *Executive Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 569 (8th Cir. 2008) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Doe v. Miller*, 405 F.3d 700, 714 (8th Cir. 2005)).

The City does not respond to this argument in the section of its response addressing plaintiffs' rational basis argument (Dkt. No. 45, at 6-9). However, elsewhere in its response, the City points to Mr. Morley's letter to plaintiffs, which plaintiffs include as an exhibit to their brief, that provides:

> [Section 14-112(b) and Section 14-114(b)] were passed in 2006 in order to have residents remove fences that had been built beyond their property lines. Residents had been constructing fences on open space and common property in order to enlarge their yard area. The [c]ity council passed the law to prevent this from happening in the future and over time, to have the older fences removed when they needed repair or replacement.

(Dkt. No. 45, at 4-5). The City submits that the law serves the City's legitimate interest in liberating common property in a manner that keeps the peace and maintains the happiness of its citizens (*Id.*, at 5).

The Court determines that, construing all record evidence in favor of the City as this Court is required to do at this stage of the proceedings, the City has presented record evidence which raises a genuine issue of material fact as to whether the City's rationale is sufficient to justify enactment of § 14-114(b). *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 74 (1978). Even assuming without deciding that limiting the scope of rational basis review to a question of whether there is a rational connection between damage to a fence and the position of that fence is appropriate, the City has articulated a legitimate interest in enacting the ordinance. Plaintiffs have failed to undermine through record evidence the rational basis offered by the City for the enactment of § 14-114(b).

Plaintiffs also argue that the Rolling Oaks exemption in Ordinance 910 demonstrates the irrationality of the City's fence ordinances (Dkt. No. 44-1, at 48). The City responds that plaintiffs' argument is an equal protection issue disguised as a due process issue (Dkt. No. 45, at 6).

The Court addressed plaintiffs' rational basis review argument with respect to their equal protection claim regarding Ordinances 910 and 933 in a prior Order (Dkt. No. 51). Plaintiffs do not allege here that they were deprived of a "fundamental right" for purposes of substantive due process analysis, so the City's action is constitutional if it rationally furthers a legitimate state interest. *Executive Air Taxi Corp.*, 518 F.3d at 569. "A rational basis that survives equal protection scrutiny also satisfies substantive due process analysis." *Executive Air Taxi Corp.*, 518 F.3d at 569 (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 (1981); *Independent Charities of America, Inc. v. Minnesota*, 82 F.3d 791, 798 (8th Cir. 1996). *See also Kansas City Taxi Cab Drivers Ass'n, LLC v. City of Kansas City, Mo.*, 742 F.3d 807, 809 (8th Cir. 2013). In its prior Order, this Court determined that the plaintiffs had failed to carry their burden at the summary judgment stage as to their equal protection claim and that the City had presented record evidence which raised a genuine issue of material fact as to whether the City's rationale was sufficient to justify enactment of Ordinances 910 and 933 (Dkt. No. 51, at 9). Because "[a] rational basis that survives equal protection scrutiny also satisfies substance due process analysis," the Court will not grant summary judgment to plaintiffs on the basis that Ordinance 910 demonstrates the irrationality of the City's fence ordinances. *Executive Air Taxi Corp.*, 518 F.3d at 569.

### 3. *Ex Post Facto* Clause

Plaintiffs next argue that the City's fence ordinances are illegal *ex post facto* legislation (Dkt. No. 44-1, at 55). Plaintiffs argue that the side fences extended beyond their respective property lines years before the City adopted any ordinance making this practice illegal (*Id.*, at 55-

17

56).  Plaintiffs contend that the side fences were therefore legal at the time they were erected and that the fences were deemed to be legal by the City through the ordinances' "grandfather" exemption (*Id.*, at 56).  According to plaintiffs, because the damage did not change the original legal position of the fence, there is no current violation of any ordinance with respect to the original legal position of the fence, and the City cannot enforce an ordinance that retroactively punishes plaintiffs for actions that were perfectly legal at the time they were taken (*Id.*, at 56, 62).  The City contends that plaintiffs' argument is flawed at the outset because the fence never stood in a legal position given that it extended past plaintiffs' properties both prior to the enactment of the ordinances and after it (Dkt. No. 45, at 6).

Having determined that there are genuine issues of material fact regarding the due process issues discussed *supra* in this case, the Court will not grant plaintiffs' motion for partial summary judgment on this basis.

### 4. Non-Conforming Uses And Amortization

Plaintiffs next argue that their side fences are nonconforming uses that are protected by the United States and Arkansas Constitutions because the fences were originally exempted from the City ordinances (Dkt. No. 44-1, at 63).  The City does not respond to this argument.  Having determined that there are genuine issues of material fact regarding the due process issues discussed *supra* in this case, the Court will not grant plaintiffs' motion for partial summary judgment on this basis.

Finally, plaintiffs argue hypothetically in their brief that the City cannot justify destroying plaintiffs' fence under the doctrine of amortization (Dkt. No. 44-1, at 70).  The City does not assert the doctrine of amortization as a defense in its opposition arguments to plaintiffs' motion for partial summary judgment.  Accordingly, the Court declines to address the issue.

## IV. Conclusion

On the record before the Court, the Court concludes there are genuine issues of material fact in dispute. *See Doctor John's, Inc. v. City of Sioux City, IA*, 467 F.Supp.2d 925 (N.D. Iowa 2006), *order clarified sub nom. Doctor John's, Inc. v. Sioux City,* No. C 03-4121-MWB, 2007 WL 200927 (N.D. Iowa Jan. 13, 2007), *order clarified*, *Doctor John's, Inc. v. Sioux City,* No. C 03-4121-MWB, 2007 WL 200928 (N.D. Iowa Jan. 16, 2007) (examining trial issues with respect to Equal Protection claim); *see also Conlin v. City of Des Moines, IA*, Case No. 4:12-cv-00608-HCA, 2016 WL 3586713 (S.D. Iowa Mar. 31, 2016) (same). The Court denies plaintiffs' motion for partial summary judgment (Dkt. No. 44).

It is so ordered this 30th day of March, 2019.

_____
Kristine G. Baker
United States District Judge